## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JERRY MICHAEL BAKER** | ) | |
| **AND AMY BAKER** | ) | Civil Action No.   2:21-cv-683 |
| 1445 Mason Dixon Hwy. | ) | |
| Core, West Virginia 26541 | ) | Type of Pleading: |
| | ) | **COMPLAINT IN CIVIL ACTION** |
| Plaintiffs, | ) | |
| vs. | ) | Filed on Behalf of Plaintiffs |
| | ) | |
| **SANDVIK, INC.** | ) | |
| 1702 Nevins Road | ) | Counsel of Record For This Party: |
| Fair Lawn, New Jersey 07410 | ) | |
| | ) | **BAILEY JAVINS & CARTER LC** |
| and | ) | 213 Hale St. |
| | ) | Charleston, WV 25301 |
| **SANDVIK MINING AND** | ) | |
| **ROCK TECHNOLOGY** | ) | |
| 1702 Nevins Road | ) | **TERSHEL & ASSOCIATES** |
| Fair Lawn, New Jersey 07410 | ) | Helena Professional Building |
| | ) | 55 S. Main Street |
| and | ) | Washington, Pa. 15301 |
| | ) | |
| **SANDVIK MINING AND** | ) | |
| **ROCK SOLUTIONS** | ) | |
| 1702 Nevins Road | ) | |
| Fair Lawn, New Jersey 07410 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **SANDVIK MINING AND** | ) | |
| **CONSTRUCTION USA, LLC** | ) | |
| 1702 Nevins Road | ) | |
| Fair Lawn, New Jersey 07410 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **SANDVIK MINING AND** | ) | |
| **CONSTRUCTION, LLC** | ) | |
| 1702 Nevins Road | ) | |
| Fair Lawn, New Jersey 07410 | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED.** |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JERRY MICHAEL BAKER and
AMY BAKER,

      Plaintiffs,

v.

SANDVIK, INC., a Delaware Corporation,
SANDVIK MINING AND ROCK
TECHNOLOGY, a Delaware Corporation,
SANDVIK MINING AND ROCK SOLUTIONS,
a Delaware Corporation, SANDVIK MINING AND
CONSTRUCTION USA, LLC, a Delaware, LLC; and
SANDVIK MINING AND CONSTRUCTION, LLC,
a Delaware, LLC,

      Defendants.

CIVIL ACTION NO.
Judge:

## **COMPLAINT**

For their Complaint against the defendants, the plaintiffs allege and state as follows:

## **PARTIES**

1.     The plaintiffs, Jerry Michael Baker and Amy Baker, husband and wife, are citizens

and residents of Monongalia County, West Virginia.  Specifically, plaintiffs reside together at 1445

Mason Dixon Hwy., Core, West Virginia 26541.

2.     The defendants, Sandvik, Inc.; Sandvik Mining and Rock Technology; Sandvik

Mining and Rock Solutions; Sandvik Mining and Construction USA, LLC; and Sandvik Mining

and Construction, LLC, (hereinafter all defendants are collectively referred to as "Sandvik" and/or

"defendants") are Delaware corporations and/or limited liability companies.  At all times relevant

hereto, Sandvik was in the business of manufacturing, modifying, fabricating, designing,

packaging, supplying, shipping, selling, servicing, inspecting, maintaining, marketing, labeling,

and/or distributing underground mining equipment in the commonwealth of Pennsylvania,

including but not limited to, the Sandvik MB450 bolter miner, Serial/Identification No. 061 ("subject Sandvik bolter miner"). Defendants are authorized to do business, and do conduct business, within the Commonwealth of Pennsylvania, and specifically the Western District through its facility located at 6701 National Pike E, Brier Hill, PA 15415, and at Consol of Pennsylvania, LLC's Enlow Fork Mine where the subject Sandvik bolter miner was being utilized on May 22, 2019, at the time of the events giving rise to this cause of action.

## JURISDICTION AND VENUE

3.     This Court has original jurisdiction over this civil matter pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000, exclusive of costs and interest, and involves citizens of different states.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b) in that defendants regularly engaged in business in this district and throughout the United States and the events giving rise to the claims herein took place in Claysville, Washington County, Pennsylvania within the Western District of Pennsylvania.

## FACTS

5.     On a date prior to the event giving rise to this cause of action, the defendants (Sandvik) were engaged in the business of manufacturing, modifying, fabricating, designing, packaging, supplying, shipping, selling, servicing, inspecting, maintaining, marketing, labeling, and/or distributing equipment for use in underground coal mines, and more specifically, the Sandvik full-face MB450 bolter miner.[1] The Sandvik MB450 model is used throughout the United

---

[1] A full-face continuous mining machine includes integral roof bolting equipment and develops the full width of the mine entry/roadway in a single cut. The Sandvik MB 450 bolter miner was previously known as a Voest Alpine and/or ABM14 miner.

States in the underground coal mining industry, including at Consol of Pennsylvania, LLC's ("Consol") Enlow Fork Mine in Claysville, Pennsylvania where plaintiff Jerry "Michael" Baker was employed.

6.      Sandvik claims on its website that it is "a global leading supplier in equipment and tools, parts, service and technical solutions for the mining and construction industries.  The focus lies on bringing value to customers through high-performing products that increase productivity and safety as well as to provide services and flexible maintenance programs that extend uptime and cut costs."

7.      On a date prior to the event giving rise to this cause of action, defendants (Sandvik) manufactured, designed, tested, engineered, distributed, sold, supplied, labeled, and marketed the subject Sandvik bolter miner.  The subject Sandvik bolter miner was marketed for its intended use of roadway/entry development in underground coal mines in seams from six (6) to twelve (12) feet.  According to Sandvik, the subject Sandvik bolter miner "is a wide-head continuous miner that incorporates special design features for cutting, loading and ground support."

8.      With respect to its equipment, including the subject bolter miner, Sandvik, through its own actions, developed the Sandvik "EDEEP"[2] process.      According to its website, "the objective of the Sandvik EDEEP process is to look at the design of a piece of equipment (including the subject Sandvik bolter miner) and evaluate how potential safety risks can be mitigated."  The Sandvik EDEEP process is aimed to optimize safety during maintenance and operation of Sandvik equipment, including the subject bolter miner.

---

[2]   EDEEP stands for "EMERST Design Evaluation for Equipment Procurement."   EMERST ("Earth Moving Equipment Safety Round Table") engages with mining equipment manufacturers with the aim of accelerating improvements in the safe design of mining equipment.

9.     Regarding Sandvik's safety culture, Sandvik, on its website, claims that it provides safety training to not only its own employees, but its customers as well:

> "By continuously monitoring potential and actual risks and hazards we are able to make the Sandvik workplace a safer place to be in.  Sandvik Mining places a high importance on training for both its employees and customers working with our equipment as we recognize this as one of the positive methods of helping to avoid accidents."

10.     Sandvik, as a manufacturer, designer, supplier, and marketer of underground mining equipment, has known for decades that miners working near continuous mining machines are exposed to pinning, crushing, and striking hazards that result in incidents involving life-threatening injuries and death.

11.     On a date prior to May 22, 2019, Consol purchased and placed the subject Sandvik bolter miner (Serial/Identification No. 061) into service at its Enlow Fork Mine in Claysville, Pennsylvania.  In addition to the subject Sandvik bolter miner, Consol had also purchased and placed into service at least three (3) other Sandvik MB450 bolter miners on and prior to May 22, 2019.

12.     The subject Sandvik bolter miner is equipped with integral roof bolting equipment on the miner so the roof bolters can bolt the top as the miner progresses.  Importantly, the subject Sandvik bolter miner contains an automated temporary roof support ("ATRS") system to protect the roof bolters and others from roof falls and unsupported top.

13.     The subject Sandvik bolter miner is powered up and turned on through a main pump motor.  It is then operated through a remote-control unit by the continuous miner operator.  Functions on the remote-control unit include the boom swing (left and right) as well as the cutter head retract, among others.

14.     The operating functions for the subject Sandvik bolter miner are controlled through electronic hydraulic solenoids that are located inside a valve bank compartment on the miner. When the subject bolter miner was manufactured and designed, Sandvik inexplicably placed and located the solenoid valve bank compartment directly underneath the rock flipper on the front of the miner near the cutter head, under unsupported top, creating a defective design.  This means that during the everyday normal mining process, hard rock, coal and debris constantly fall and pound directly on top of the solenoid valve bank compartment putting the solenoids at a high risk of becoming damaged.  A damaged solenoid could then cause the subject miner and its operating functions to not operate as expected creating an unsafe work environment for any person working on or near the subject Sandvik bolter miner.

15.     Upon information and belief, one of Sandvik's main competitors, Joy Mining, designs and manufactures a similar full-face bolter miner where the solenoid valve bank compartment is located on the back of the miner near the boom under supported top.  As a result, the solenoids are not at such a high risk of becoming damaged and the machine will operate as designed.

16.     It is common knowledge in the mining industry that many fatalities and serious injuries occur because a miner becomes pinned and crushed between the boom of the continuous miner and rib.  As such, it is paramount in the safety design and engineering of a continuous miner, such as the subject Sandvik bolter miner, that all available safety measures and design features are considered and implemented in the design and manufacturing process.  Despite the known risk, related to the dangers a boom presents on a continuous miner, Sandvik failed to manufacture and design the subject bolter miner with a shut-off valve for the boom, re-locate the solenoid valve bank compartment to an area on the machine that is under supported top or not susceptible to

damage from falling rock and debris, or install any type of proximity detection system on the machine.[3]

17.     At all times relevant, plaintiff Michael Baker was employed as the 2nd shift section boss at Consol's Enlow-Fork underground mine.  On May 22, 2019, plaintiff went to work as usual.  Plaintiff did not receive any reports from day-shift regarding any problems or issues with the subject Sandvik bolter miner.

18.     At the beginning of the shift, Mr. Baker performed his required and legally mandated inspection of the section.  Mr. Baker signed the date board located on the rib in each entry to document his inspection.  During this same time, the subject Sandvik bolter miner, which was located in the No. 5 entry, was backed out of the face to troubleshoot problems with the remote solenoids for the boom swing and cutting head retract functions.  The boom was swung to the left looking inby to allow supplies to be loaded onto the miner.  After the machine was supplied and an initial repair performed, the maintenance mechanic instructed the continuous miner operator to start the machine.  The continuous miner operator started the machine, and the boom moved immediately and unexpectedly to the left on its own without using the remote-control switch.  At the same time, Mr. Baker walked between the boom of the miner and rib to sign the date board on the rib, resulting in him being struck in the back and crushed between the boom and rib.

19.     Mr. Baker did not hear any start-up alarm or any other type of warning to indicate that the subject Sandvik bolter miner was being started.  Neither the maintenance mechanic nor

---

[3] While proximity detection is not currently mandated by the Department of Labor for full-face continuous mining machines, it has been a common safety feature for continuous miners for 15 plus years, as studies and research has indicated that proximity detection is a known life saver.  In fact, with respect to the boom, the hazards are identical whether it is a full-face continuous miner like the subject Sandvik bolter miner, or a regular continuous miner.

the continuous miner operator realized or could see Mr. Baker walking between the boom and rib at the time of the incident.

20.     Mr. Baker was pinned between the boom and rib for approximately 20 to 30 seconds before he was freed.  Mr. Baker was unconscious for a period of time immediately following the incident and then regained consciousness.  Mr. Baker was administered AED and oxygen by first responders and was transferred by an emergency vehicle outside the mine to an awaiting ambulance and subsequently life-flighted to Ruby Memorial Hospital in Morgantown, West Virginia.  Mr. Baker was initially hospitalized for approximately four (4) weeks after suffering serious, permanent, and near fatal crushing injuries to his chest area, ribs, lungs, shoulder, back, and neck resulting in multiple surgeries, rehabilitation, and treatment.  Mr. Baker, who is now two (2) years post-incident, is still actively treating as a result of his injuries, and has not been able to successfully return to work.

21.     Following the incident, an investigation was performed by federal and state mine regulatory bodies, including the U.S. Department of Labor, Mine Safety and Health Administration ("MSHA") as well as the Bureau of Mine Safety from the Commonwealth of Pennsylvania.  A Sandvik representative was present and participated during the investigation. The following findings and conclusions were determined during the investigation:

- The solenoid valve bank was located directly under the rock flipper in the center of the cutting head frame under unsupported top.

- The solenoid valve bank contained stone, coal, and other debris.

- Three solenoids were found to be smashed and bent, including the solenoid to control the boom swing function.

- Falling rock, during the mining cycle, fell and damaged the rock flipper/shield protector and the solenoids.

8

- When the subject miner was started engaging the pump motor, the boom started to move immediately and unexpectedly without using the remote-control switch due to the fact that the solenoid in this bank was stuck in the open position due to be damaged. Neither the continuous miner operator nor the maintenance mechanic knew or realized that the solenoid which operates the boom was stuck in the open position.

22.     Following the incident, Sandvik authored and disseminated a memo requiring manual shut-off valves to be installed for the boom on the subject Sandvik bolter miner and other similar Sandvik bolter miners of the same model so that the boom will not swing unexpectedly when the miner is started. This boom shut-off valve was not only installed on the subject Sandvik bolter miner, but also all other similar Sandvik miners at Consol's Enlow-Fork mine and other Consol mines.

23.     Just like a normal every-day automobile that everyone operates, a continuous miner and its functions should not operate as soon as the machine is turned on and started. A typical automobile does not move until the operator depresses the brake and then manually shifts the gear out of park. Now, the continuous miner operator must manually turn and release and shut-off valve for the boom to swing. Had the subject Sandvik bolter miner been equipped with this reasonable and available fail-safe technology, the subject incident would have been prevented, as the boom would not have moved despite the condition of the damaged solenoid.

24.     It was foreseeable to Sandvik that the design of the subject Sandvik bolter miner could cause the miner to not operate as designed and intended by the operator, including the boom-swing function, as the solenoids were in a location on the machine under unsupported top putting them at high risk of becoming damaged. In turn, Sandvik knew or should have known that persons operating and/or working on or near the subject Sandvik bolter miner would be exposed to serious hazards and risk of injury by virtue of this defective design and the fact that the machine was not equipped with any fail-safe technology, such as a manual shut-off valve for the boom, proximity

detection, and/or an adequate start-up alarm to allow anyone in the area sufficient time to get out of the potential danger zone.

25.     Despite Sandvik's knowledge regarding the serious hazards to the users of its subject Sandvik bolter miner as described herein, Sandvik failed to provide any warning(s) or training to the operators and employees at the Consol Enlow-Fork mine with respect to these serious safety hazards, such as the one that caused Mr. Baker's serious, permanent and disabling injuries.

26.     Plaintiffs believe and, therefore, aver that defendants knew and/or had reason to know of and/or had actual and/or constructive knowledge and/or notice that:

    a.  the probability and seriousness of potential harm and/or injury, due to using and/or operating the subject Sandvik bolter miner, outweighed the burden and/or cost on the defendants to take appropriate precaution in the design, manufacture, distribution, sale, labeling, and/or warnings of the subject Sandvik bolter miner; and/or

    b.  the subject Sandvik bolter miner did not perform as safely as an ordinary customer and/or anticipated user would have expected it to perform when used in an intended way.

27.     As a direct and proximate result of the actions, omissions and conduct of the defendants, on and before May 22, 2019, the plaintiff, Jerry Michael Baker, sustained the serious, severe and permanently disabling injuries described herein and further sustained the following past and future damages:

    a.      extreme physical pain and suffering;

    b.      extreme mental anguish and suffering;

c.      permanent physical impairment;

d.      permanent psychological impairment;

e.      loss of wages and benefits;

f.      loss of future earning capacity and benefits;

g.      loss of economic horizon and diminishment of work life;

h.      permanent disability and/or permanent partial disability;

i.      loss of capacity to enjoy life;

j.      medical expenses past and future;

k.      subrogation interest and/or obligation under §319 of the Pa. WC Act;

l.      annoyance and inconvenience;

m.      permanent scarring and disfigurement; and

n.      other damages, as allowed by law.

28.     In addition, the acts and omissions forming the basis of this Complaint demonstrate that Sandvik had a conscious, reckless and outrageous indifference to the health, safety and welfare of its customers and anticipated users, including the workers at the Enlow-Fork mine, including Mr. Baker.

29.     Punitive damages are justified to punish Sandvik for its reckless and outrageous indifference which resulted in Mr. Baker's serious injuries.  Sandvik knowingly put miners – including Mr. Baker – in danger by selling Consol a product it knew was defectively designed and patently unsafe for its intended use.  The result was a defective product which directly caused Mr. Baker to suffer extreme terror, pain, and catastrophic injuries and damages.

30.     Punitive damages will serve to deter Sandvik and others like it from continuing to produce abnormally dangerous, hazardous and deadly products for profit and from placing financial considerations ahead of basic minimal regard for human life, safety, and dignity.

## COUNT I
## STRICT PRODUCT LIABILITY

31.     The plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as if set forth fully herein.

32.     The defendant, Sandvik, designed, manufactured, assembled, rebuilt, sold, supplied, marketed, labeled, serviced, distributed and/or placed into the stream of commerce the subject Sandvik bolter miner, which was used and being operated on May 22, 2019, in a manner for which it was designed, manufactured, and marketed by the defendant, Sandvik.  Sandvik was a seller as defined by the relevant portions of the Restatement (Second) of Torts.

33.     The subject Sandvik bolter miner was defective from the time it was designed, manufactured, and marketed until plaintiff Jerry Michael Baker was severely injured on May 22, 2019, while working near and in the vicinity of the machine.   Specifically, the subject Sandvik bolter miner was defective and not reasonably safe when used as intended by virtue of the fact of its design in that the solenoid(s) which control the boom swing function were located in an area on the machine under unsupported top where rock and debris would constantly fall and damage the solenoids during the normal mining cycle causing the machine, and specifically the boom swing function, to operate unexpectedly and not as intended by the operator in that the boom would automatically swing when power to the machine was turned on without using the boom swing switch on the remove-control unit.  Despite this defective and not reasonably safe design, Sandvik provided no protection or safeguard whatsoever to the users and person(s) working on or near the

machine for the increased risk this defect and not reasonably safe design presents, including, but not limited to, re-locating the solenoid valve bank compartment to an area on the machine under supported top or not susceptible to damage, installing a manual boom shut-off valve, proximity detection, and/or an adequate start-up alarm. Sandvik had knowledge of the subject Sandvik bolter miner's defective and not reasonably safe design, which was a proximate cause of Mr. Baker's serious injuries.

34.     At the time that the subject Sandvik bolter miner left the control of defendant, Sandvik, safer alternative designs existed which would have made the subject Sandvik bolter miner safer by ensuring that the boom would not automatically and/or unexpectedly swing and move when the machine is first started without substantially impairing the subject Sandvik bolter miner's utility. These safer alternative designs were economically and technologically feasible at all times relevant.

35.     The subject Sandvik bolter miner was further rendered not reasonably safe because an adequate warning about the hazards with operating and/or using the subject Sandvik bolter miner with defects, including the subject Sandvik bolter miner's susceptibility for its boom to inadvertently and/or unexpectedly swing and immediately move upon foreseeable start-up of the machine, was not provided to consumers, either at or after the time that the subject Sandvik bolter miner left defendant Sandvik's control.

36.     A reasonably prudent manufacturer should have included adequate warnings about the hazards with operating and/or using the subject Sandvik bolter miner with defects as described above at the time the product was made and/or distributed.

37.     In addition, Sandvik did not offer any post-sale training regarding the inherent hazards of the subject Sandvik bolter miner.

38.    Users of the Sandvik bolter miner, including the subject Sandvik bolter miner, such as the employees at Consol's Enlow-Fork mine, including the plaintiff, the continuous miner operator, and the maintenance mechanic, did not know and should not have been expected to know of the defective and not reasonably safe characteristics of the subject Sandvik bolter miner that had the potential for its boom to unexpectedly swing and immediately move upon initial start-up of the machine without use of the boom switch on the remote-control unit and cause serious injuries as were suffered by Jerry Michael Baker.

39.    As a direct and proximate result of the defective and not reasonably safe design associated with the foreseeable use and operation of the subject Sandvik bolter miner, and defendant's failure to warn plaintiff and other users of the subject Sandvik bolter miner's defect, the defendants are strictly liable to the plaintiff for the injuries and damages described herein.

WHEREFORE, based on the foregoing, plaintiffs demand compensatory and punitive damages, and all such relief sought elsewhere in this Complaint, against defendants.

## COUNT II
## BREACH OF WARRANTY

40.    The plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as if set forth fully herein.

41.    The defendant, Sandvik, at all times material hereto, by and through the sale of the subject Sandvik bolter miner, expressly and impliedly warranted to users through their actions, representations, promises, affirmations, promotions, product literature, labeling, photographs and promotional material, to all prospective consumers and the public generally, including plaintiff and Consol, that the subject Sandvik bolter miner, which the defendants designed, manufactured, assembled, rebuilt, modernized, sold, supplied, labeled, serviced, marketed and/or distributed was

14

of such quality and reasonably fit for the purpose of serving as a safe continuous miner and piece of mining equipment for use in underground coal mines.

42.     The defendant, Sandvik, breached their express and implied warranties of fitness and merchantability by defectively designing, manufacturing, assembling, building, modernizing, selling, supplying, labeling, servicing, marketing and/or distributing defective and/or not reasonably safe Sandvik bolter miners, including the subject Sandvik bolter miner.  At the time of the events giving rise to this cause of action, the subject Sandvik bolter miner was not reasonably safe for the use to which it was intended as reflected throughout the defendants' actions, representations, promises, affirmations, promotions, labeling, marketing, product literature, photographs and promotional materials.

43.     Plaintiff Jerry Michael Baker and the employees at Consol's Enlow-Fork mine, including the continuous miner operator and maintenance mechanic made use of the subject Sandvik bolter miner as alleged herein, and relied on the express and implied warranties made by Sandvik through their actions, representations, promises, affirmations, promotions, product literature, photographs, labeling, and promotional material that accompanied the subject Sandvik bolter miner.

44.     The defendant, Sandvik, further breached their express and implied warranties of fitness and merchantability by failing to warn and/or instruct users, purchasers, the public, and others, including plaintiff, concerning the dangerous characteristics, manufacturer's labels, warnings or instructions of the subject Sandvik bolter miner when used in a reasonably foreseeable manner.

45.     As a direct and proximate result of the defendants' breach of warranties arising out of the sale and marketing of the subject Sandvik bolter miner, plaintiff Jerry Michael Baker sustained the injuries and damages described herein.

WHEREFORE, based on the foregoing, plaintiffs demand compensatory and punitive damages, and all such relief sought elsewhere in this Complaint, against defendants.

## COUNT III
## NEGLIGENCE

46.     The plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as if set forth fully herein.

47.     The defendant, Sandvik, owes a duty of care to those individuals who use and work around their products in a way that is reasonably foreseeable to Sandvik, such as plaintiff Jerry Michael Baker, the continuous miner operator and the maintenance did on May 22, 2019. Defendant Sandvik owes these individuals a duty to use reasonable care in manufacturing, re-manufacturing, modifying and/or altering, fabricating, designing, packaging, labeling, supplying, shipping, selling, servicing, maintaining, and/or distributing Sandvik bolter miners, and to protect them from unreasonable harm in the ordinary and foreseeable use of their products.

48.     Defendant Sandvik breached this duty and was negligent and reckless in the following acts or omissions:

      a.     Sandvik negligently and recklessly manufactured, re-manufactured, modified and/or altered, fabricated, designed, packaged, shipped, labeled, supplied, sold, serviced, maintained and/or distributed the subject Sandvik bolter miner in such condition that it failed to perform in the manner for which it was intended;

      b.     Sandvik negligently and recklessly manufactured, re-manufactured, modified and/or altered, fabricated, designed, packaged, shipped, labeled, supplied, sold, serviced, maintained, and/or distributed the

subject Sandvik bolter miner in a manner so that it could not be operated in a safe manner;

c.      Sandvik negligently and recklessly caused to place into the stream of commerce the subject Sandvik bolter miner in a manner so eminently dangerous and inherently defective that users of the subject Sandvik bolter miner could not appreciate the dangers associated with its use; and

d.      Sandvik, pursuant to its common law duties and own voluntary actions through its EDEEP process and safety/training policies, negligently and recklessly failed to make reasonable inspections and tests, and failed to train, instruct, warn, and/or follow reasonable quality control procedures to discover the defects, dangers, and hazards presented by the subject Sandvik bolter miner and to train and instruct the consumer, Consol, and/or all other intended and/or anticipated users, regarding the same, which the defendant, Sandvik, manufactured, re-manufactured, modified, and/or altered, fabricated, designed, packaged, shipped, labeled, supplied, sold, serviced, maintained, and/or distributed.

49.     As a direct and proximate result of the defendant, Sandvik's negligent and reckless actions, omissions and conduct, plaintiff Jerry Michael Baker sustained the injuries and damages described herein.

WHEREFORE, based on the foregoing, plaintiffs demand compensatory and punitive damages, and all such relief sought elsewhere in this Complaint, against defendants.

## COUNT IV
## LOSS OF CONSORTIUM

50.     The plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as if set forth fully herein.

51.     As a further direct and proximate result of the conduct and actions of the defendant as described herein, the plaintiff, Amy Baker, has been deprived of the loss of society, companionship, and consortium of her husband, Jerry Michael Baker.

WHEREFORE, based on the foregoing, plaintiffs demand compensatory and punitive damages, and all such relief sought elsewhere in this Complaint, against defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the plaintiffs, demand judgment against Sandvik for:

      a.  an amount of compensatory damages determined by a jury according to the laws of the Commonwealth of Pennsylvania;

      b.  an amount of punitive damages determined by a jury according to the laws of the Commonwealth of Pennsylvania;

      c.  costs and attorney fees expended in prosecution of this matter;

      d.  pre-judgment and post-judgment interest as provided under the law; and

      e.  any and all other relief to which the Court deems plaintiffs are entitled.

**A JURY TRIAL IS DEMANDED.**

JERRY MICHAEL BAKER
and AMY BAKER,

By Counsel

/s/ J. Ryan Stewart
J. Ryan Stewart (WVSB No. 10796)
Taylor M. Norman (WVSB No. 13026)
BAILEY JAVINS & CARTER LC
213 Hale Street
Charleston, West Virginia 25301
Telephone: (304) 345-0346
Facsimile: (304) 345-0375
rstewart@bjc4u.com
tnorman@bjc4u.com

/s/ Jarrod T. Takah
Paul A. Tershel (Pa. No. 30444)
Jarrod T. Takah (Pa. No. 208953)
Tershel & Associates
55 S. Main St.
Washington, Pennsylvania 15301
Telephone: (724) 228-4700
Facsimile: (724) 228.6482
ptersh@hotmail.com
jtakah@tershelandassociates.com